IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

**JAMES EUBANKS,**

    **Petitioner,**

v.                                            **Case No. 5:21-cv-00351**

**D.L. YOUNG, Warden**

    **Respondent.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

On June 17, 2021, Petitioner James Eubanks ("Petitioner"), proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1). This matter is assigned to the Honorable Frank W. Volk, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Currently pending is Respondent's request for dismissal as articulated in his Responses to the Court's Orders. (ECF Nos. 7, 10).

Having thoroughly reviewed the record, the undersigned **FINDS** that Petitioner did not exhaust his administrative remedies and does not state a claim for relief under § 2241. Accordingly, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **GRANT** the request for dismissal; **DISMISS** the Petition for a Writ of Habeas Corpus; and remove this matter from the docket of the Court.

1

I. **Relevant Facts**

Petitioner is a federal prisoner incarcerated in Federal Correctional Institution Beckley ("FCI Beckley") in Beaver, West Virginia with a projected release date of March 24, 2023. *See* Inmate Locator, Federal Bureau of Prisons, Inmate No. 21749-057. On December 12, 2002, the United States District Court for the Middle District of North Carolina sentenced Petitioner to consecutive terms of 210 months of imprisonment for bank robbery with a dangerous weapon in violation of 18 U.S.C. § 2113(d) and 84 months of imprisonment for carrying and using a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii). *See United States v. Eubanks*, No. 1:02-cr-00195-NCT-1 (M.D.N.C. Nov. 7, 2005), ECF Nos. 60-2 at 2, 110 at 1.

On June 17, 2021, while Petitioner was incarcerated in FCI Beckley in this judicial district, he filed a *pro se* petition for habeas relief under § 2241. (ECF No. 1). Petitioner contends that he is "being denied calculation of First Step Act time credits" by the Federal Bureau of Prisons ("BOP").[1] (ECF No. 1 at 6). According to Petitioner,

---

[1] The First Step Act ("FSA"), enacted on December 21, 2018, allows eligible federal prisoners who have not committed offenses enumerated in 18 U.S.C. § 3632(d)(4)(D) to earn 10 to 15 days of time credits for every 30 days of successful participation in Evidence Based Recidivism Reduction Programs and Productive Activities. 18 U.S.C. § 3632(d)(4)(A)(i). Prisoners who are determined "to be at a minimum or low risk for recidivating," may "earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities," if they have not increased their risk of recidivism over two consecutive assessments. 18 U.S.C. § 3632(d)(4)(A)(ii). The BOP utilizes the Prisoner Assessment Tool Targeting Estimated Risk and Needs (PATTERN) to evaluate "the recidivism risk of each prisoner as part of the intake process, and classify each prisoner as having minimum, low, medium, or high risk for recidivism," as well as to "reassess the recidivism risk of each prisoner periodically, based on factors including indicators of progress, and of regression, that are dynamic and that can reasonably be expected to change while in prison." *United States v. Tinsley*, No. CR ELH-13-476, 2021 WL 5084691, at *16 n. 8 (D. Md. Nov. 2, 2021) (citing 18 U.S.C. §§ 3632(a)(1), (4)). A prisoner's FSA time credits can be applied to the prisoner's sentence to result in earlier release to pre-release custody, such as a residential reentry center ("halfway house") or home confinement, or up to 12 months of credit can be applied to a prisoner's term of supervised release. 18 U.S.C. §§ 3624(g), 3632(d)(4)(C). The credits can be earned retroactively beginning on the date that the FSA was signed into law. 18 U.S.C. § 3632(d)(4)(A). However, the FSA established a two-year "phase-in" period, and the BOP interpreted that it had until January 15, 2022 to apply the applicable time credits to prisoners' sentences. 18 U.S.C. § 3621(h)(2).

2

he qualifies for FSA time credits because he completed over 240 hours of assigned education programs and over 500 hours in a prison job. (*Id.*). He asks the Court to order the BOP to calculate his FSA credits and immediately release him. (*Id.* at 7).

On August 2, 2021, the undersigned entered an Order directing Respondent to show cause why the relief requested by Petitioner should not be granted. (ECF No. 6). Respondent filed a response to the Show Cause Order on August 19, 2021, moving to dismiss the petition. (ECF No. 7). Respondent argued that the petition should be dismissed because Petitioner did not exhaust his administrative remedies regarding his claim, and the BOP was not required to fully implement the time credit provisions of the FSA until January 15, 2022. (*Id.*). Respondent attached as an exhibit to his response an affidavit dated August 12, 2021, from Destiny Spearen, a paralegal for the Beckley Consolidated Legal Center at FCI Beckley. (ECF No. 7-1 at 2). Ms. Spearen stated that she reviewed Petitioner's administrative history on SENTRY, the BOP's computer database, and Petitioner had not filed any administrative remedies regarding FSA time credits. (*Id.*). She attached to her affidavit Petitioner's administrative remedy history. (*Id.* at 4-9). Ms. Spearen also attached Petitioner's "Inmate History," which listed the BOP's initial assessment and periodic reassessments of Petitioner's risk of recidivism and eligibility for time credits under the FSA. (*Id.* at 116). As shown in the documents, the BOP determined that Petitioner was at a high risk of recidivism in December 2019, June 2020, and January and February 2021, and he was a medium recidivism risk in April and July 2021. (*Id.*). The BOP determined that Petitioner was ineligible to receive FSA time credits in December 2019 and January 2021. (*Id.*).

On August 20, 2021, the undersigned entered an Order advising Petitioner of his right to file a reply to Respondent's response and motion to dismiss. (ECF No. 8).

3

The undersigned allotted Petitioner 60 days to file a reply, but he did not respond. (*Id.*). On January 31, 2022, the undersigned entered another Order, noting that the deadline for the BOP to fully implement the FSA expired, and the undersigned ordered Respondent to file a supplemental answer or response to the petition showing cause why the relief sought by Petitioner should not be granted. (ECF No. 9). The undersigned specified that Petitioner had the option to file a reply within seven days after service of the supplemental response. (*Id.*).

Respondent filed a supplemental response to the petition on February 10, 2022, in which he moved to dismiss the petition as moot because the BOP implemented the FSA and was applying time credits to all eligible inmates. (ECF No. 10 at 2). Respondent included as an exhibit to his supplemental response a supplemental declaration from Ms. Spearen dated February 3, 2022. (ECF No. 10-1 at 2). Ms. Spearen confirmed that she reviewed Petitioner's administrative remedy history on SENTRY, the BOP's computer database, and Petitioner had not filed any administrative remedies concerning the FSA or his eligibility for FSA release. (*Id.*). Ms. Spearen stated that Petitioner was not eligible for FSA release, and she attached to her affidavit Petitioner's sentence computation data indicating that Petitioner is eligible for home detention on September 24, 2022 and projected to be released on March 24, 2023. (*Id.* at 2, 60). Ms. Spearen also attached Petitioner's administrative remedy history, none of which mentioned FSA credits. (*Id.* at 64-69). Petitioner did not file a reply to Respondent's supplemental response and motion to dismiss.

## II. **Standard of Review**

Although Respondent did not state under which rule he brought the request for dismissal, given the stage of the proceedings and nature of the arguments presented, it

is best understood as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), which challenges a court's subject matter jurisdiction over the pending dispute. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). A Rule 12(b)(1) motion can be presented in two ways. First, the movant may contend that "a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Adams*, 697 F.2d at 1219. When presented with this contention, the court assumes that the allegations in the complaint are true and affords the plaintiff the same procedural protection he would receive under Rule 12(b)(6). *Id.* Second, the movant may raise a factual attack against the complaint, alleging that the jurisdictional allegations of the complaint are not true. *Id.* Then, a court "is to regard the pleadings' allegations as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams*, 697 F.2d at 1219). The burden of proving that a court has subject matter jurisdiction rests with the petitioner, as he is the party asserting it. *Johnson v. N. Carolina*, 905 F. Supp. 2d 712, 719 (W.D.N.C. 2012). However, the court should grant dismissal "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*

  A motion to dismiss under Rule 12(b)(1) is the appropriate avenue by which to raise the issue of mootness, because mootness generally deprives a federal court of jurisdiction under Article III of the United States Constitution. *See Justice v. Acosta*, No. 2:17-CV-03681, 2018 WL 4291744, at *3 (S.D.W. Va. Sept. 7, 2018); *see also Estate of Peeples v. Barnwell Cty. Hosp.*, No. CIV.A. 1:13-01678, 2014 WL 607586, at *5 (D.S.C. Feb. 18, 2014) (collecting cases). Here, Respondent is bringing a factual

5

challenge to this Court's jurisdiction over Petitioner's petition, alleging that subsequent developments have removed the factual basis for jurisdiction. As such, this Court may consider evidence outside the pleadings without converting the motion to one for summary judgment. *See L.K. ex rel. Henderson v. N. Carolina State Bd. of Educ.*, No. 5:08-CV-85-BR, 2011 WL 861181, at *4 (E.D.N.C. Feb. 18, 2011), *report and recommendation adopted*, No. 5:08-CV-00085-BR, 2011 WL 861154 (E.D.N.C. Mar. 9, 2011).

Respondent also seeks dismissal on the basis that Petitioner did not exhaust his administrative remedies, which is not a jurisdictional challenge. He filed a response concurrently with his request for dismissal. Therefore, the motion can be construed as a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure, as opposed to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009). However, whether the Court construes the motion as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), the distinction makes no practical difference as the same standard of review applies to either motion, and both motions may be filed in habeas actions. *Id.*; *see also Martin v. U.S. Parole Comm'n*, No. cv PWG-17-3335, 2018 WL 2135009, at *1 (D. Md. May 9, 2018).

When deciding a motion for judgment on the pleadings, the court must accept all well-pleaded allegations of the petition as true and "draw all reasonable factual inferences" in favor of the petitioner. *See Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014); *Wolfe v. Johnson*, 565 F.3d 140, 169 (4th Cir. 2009). Nonetheless, the court is "not obliged to accept allegations that 'represent unwarranted inferences,

unreasonable conclusions, or arguments,' or that 'contradict matters properly subject to judicial notice or by exhibit.'" *Massey*, 759 F.3d at 353 (quoting *Blankenship v. Manchin*, 471 F.3d 523, 529 (4th Cir. 2006)). A court presented with a motion for judgment on the pleadings in a federal habeas case must consider "the face of the petition and any attached exhibits." *Walker*, 589 F.3d at 139 (quoting *Wolfe*, 565 F.3d at 169) (internal markings omitted). In addition, the court may consider "matters of public record," including documents from prior or pending court proceedings, when resolving the motion without converting it into a motion for summary judgment. *Id.* The Court "may also consider documents attached to the complaint ... as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Blankenship*, 471 F.3d at 526 n.1).

### III. Discussion

Petitioner alleges in his petition that the Court should order the BOP to calculate his FSA credits and immediately release him from prison. (ECF No. 1 at 7). In response, Respondent moves to dismiss the petition on the basis that Petitioner's claim is moot, and he has not exhausted his administrative remedies. (ECF Nos. 7, 10).

#### *A. Mootness*

Respondent asserts that Petitioner's claim is moot because the BOP fully implemented the FSA and is applying time credits retroactively to eligible prisoners beginning on December 21, 2018, the date that the FSA was signed into law. (ECF No. 10 at 2). A court must have subject matter jurisdiction pursuant to Article III of the United States Constitution in order to address the merits of a habeas petition. Even when no party has raised the issue of subject matter jurisdiction, the Court must

consider it. Article III allows federal courts to adjudicate "only actual, ongoing cases or controversies." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990) (citations omitted). Consequently, "[t]o be justiciable under Article III of the Constitution, the conflict between the litigants must present a 'case or controversy' both at the time the lawsuit is filed and at the time it is decided. If intervening factual ... events effectively dispel the case or controversy during pendency of the suit, the federal courts are powerless to decide the questions presented." *Ross v. Reed*, 719 F.2d. 689, 693-94 (4th Cir. 1983); *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) (citations omitted) ("The requisite personal interest that must exist at the commencement of the litigation ... must continue throughout its existence."). Put simply, "[a] claim may be mooted 'when the claimant receives the relief he or she sought to obtain through the claim,' because the court no longer 'has [ ] effective relief to offer.'" *Williams v. Ozmint*, 716 F.3d 801, 809 (4th Cir. 2013) (quoting *Friedman's, Inc. v. Dunlap*, 290 F.3d 191, 197 (4th Cir. 2002)).

In this case, to the extent that Petitioner claims that the BOP has not implemented the FSA or calculated his sentence, such claims are clearly moot. However, liberally construing his *pro se* petition, Petitioner is primarily seeking for FSA credits to be applied to his sentence. The BOP has not applied any FSA time credits to Petitioner's pre-release custody or supervised release because it deems him ineligible under the statute, as further discussed below. Therefore, despite Respondent's arguments that the BOP fully implemented the FSA, and regardless of the propriety of the BOP's actions, it does not appear that Petitioner received the relief that he seeks in the petition, which is for FSA credits to be applied to his sentence. For that reason, the undersigned **FINDS** that the claim raised in the petition is not moot.

### *B. Exhaustion*

The undersigned next considers Respondent's contention that Petitioner failed to exhaust his administrative remedies concerning his claim for FSA time credits. Although § 2241 does not itself contain an exhaustion prerequisite, courts have judicially imposed a duty on prisoners to exhaust administrative remedies before bringing a claim under that statute. *See Braden v. 30th Judicial Circuit Court,* 410 U.S. 484, 490–91 (1973); *see also McClung v. Shearin,* No. 03–6952, 2004 WL 225093, at *1 (4th Cir. Feb.6, 2004) (citing *Carmona v. United States Bureau of Prisons,* 243 F.3d 629, 634 (2d Cir.2001)). The court may, in its discretion, waive exhaustion under certain circumstances, such as "when a petitioner demonstrates futility, the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or the administrative procedure is clearly shown to be inadequate to prevent irreparable harm." *Wright v. Warden,* Civil Action RDB–10–671, 2010 WL 1258181, * 1 (D. Md. Mar. 24, 2010). However, "in the absence of exceptional circumstances where the need for the remedy afforded by the writ of *habeas corpus* is apparent [...] courts require exhaustion of alternative remedies before a prisoner can seek federal habeas relief." *Timms v. Johns,* 627 F.3d 525, 530–31 (4th Cir. 2010) (citations and marking omitted). "While habeas corpus is "always available to safeguard the fundamental rights of persons wrongly incarcerated, it is the avenue of last resort." *Id.*

The BOP's Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, provides a process by which an inmate can seek review of an issue relating to any aspect of his or her confinement. With certain exceptions, an inmate must first present the issue of concern informally to a BOP staff member within the procedures prescribed by the warden of the institution in which the inmate is confined. *Id.* at § 542.13. An

9

inmate can then file a formal written Administrative Remedy Request on the specified form. *Id.* at § 542.14. If the inmate is unsatisfied with the warden's response to the request, the inmate can appeal the decision to the appropriate regional director and can then appeal the response of the regional director to the general counsel. *Id.* at § 542.15. The administrative remedy request and appeals must comply with the requirements specified by the BOP. *Id.* at §§ 542.14, 542.15.

One important aspect of exhaustion is that it creates an administrative record for the Court to review. As the BOP is charged with computing an inmate's sentence and has "developed detailed procedures and guidelines for determining credit available to prisoners," *United States v. Wilson*, 503 U.S. 329, 334 (1992), the BOP should have the first opportunity to review its calculation in this case and determine if any errors were made. As a district court recently explained:

> [T]he responsibility for determining sentence-credit awards lies with the Attorney General, through the BOP, as opposed to district courts. *United States v. Roberson*, 746 F. App'x 883, 885 (11th Cir. 2018) (citing *United States v. Wilson*, 503 U.S. 329, 330 (1992)). ... Because the BOP calculates a prisoner's credit towards his federal sentence, a dissatisfied inmate must pursue the administrative remedy available through the federal prison system before seeking judicial review of his sentence. *Id.* (internal quotations and citation omitted).

*United States v. Usma*, No. 2:19-CR-133-SPC-MRM, 2022 WL 267518, at *1 (M.D. Fla. Jan. 28, 2022) (internal markings omitted).

Here, Petitioner has not filed any administrative remedy requests concerning FSA time credits. (ECF No. 10-1 at 64-69). He does not dispute Respondent's assertion or evidence that he failed to exhaust his administrative remedies, but states that he "was denied grievance process […] counsel advised me that our FSA time credits start 1/22/22." (ECF No. 1 at 2). Petitioner has not offered any factual support for his bald

10

assertion that the administrative process was "denied" to him—even after the issue of exhaustion was raised by Respondent. Moreover, contrary to Petitioner's unsupported claim, the documents provided by the BOP reflect that the administrative remedy process has been available to and used by Petitioner. (ECF No. 10-1 at 65-69). Indeed, he has filed at least six grievances since his incarceration. (*Id.*). Petitioner cannot show that the process is futile because the BOP often reviews and recalculates inmate sentences. There is no evidence that the BOP clearly and unambiguously violated statutory or constitutional rights in evaluating whether Petitioner is eligible for FSA release, and Petitioner has not shown that the administrative procedure is clearly inadequate to prevent irreparable harm. Accordingly, the undersigned **FINDS** that Petitioner did not exhaust his administrative remedies, and the exhaustion requirement should not be waived in this instance.

### C. *FSA Time Credits*

Finally, even if the Court were to waive exhaustion, Petitioner fails to allege a basis for relief under § 2241. FSA time credits can only be applied to eligible federal prisoners' sentences. 18 U.S.C. § 3632(d)(4)(A), (D). The BOP determined that Petitioner was ineligible under the FSA, and Petitioner has not challenged that finding. (ECF No. 7-1 at 116). Although Respondent did not specify in this action the BOP's reasoning for concluding that Petitioner is ineligible for credits under the FSA, a review of the petition and Petitioner's underlying criminal record indicates the BOP's reasoning. Petitioner asserts in his petition that he is currently serving a sentence that was imposed in December 2002 by the United States District Court for the Middle District of North Carolina bearing criminal action number 1:02-cr-195-1. (ECF No. 1 at 1). A review of that case demonstrates that Petitioner was convicted of a § 924(c)

violation, which prohibits him from receiving time credits under the FSA.[2] *See United States v. Eubanks*, No. 1:02-cr-00195-NCT-1 (M.D.N.C. Nov. 7, 2005), ECF Nos. 60-2 at 2, 110 at 1; 18 U.S.C. § 3632(d)(4)(D)(xxii) ("A prisoner is ineligible to receive time credits under this paragraph if the prisoner is serving a sentence for a conviction under any of the following provisions of law [...] Section 924(c), relating to unlawful possession or use of a firearm during and in relation to any crime of violence or drug trafficking crime."). Therefore, although Petitioner has allegedly participated in programming that might otherwise qualify for FSA time credits, he fails to articulate any claim that the BOP erred in determining that he was ineligible under the FSA.

Based on the above, the undersigned **FINDS** that Petitioner fails to assert a viable claim under the FSA. Therefore, the undersigned respectfully **RECOMMENDS** that the presiding district judge **DENY** the petition and **DISMISS** this action with prejudice.

## IV. Proposal and Recommendations

For the reasons stated, the undersigned respectfully **PROPOSES** that the presiding District Judge confirm and accept the foregoing findings and **RECOMMENDS** that Respondent's requests for dismissal, (ECF Nos. 7, 10), be **GRANTED**; the Petition for a Writ of Habeas Corpus, (ECF No. 1), be **DENIED**; and this matter be removed from the docket of the Court.

Petitioner is notified that this "Proposed Findings and Recommendations" is

---

[2] The bank robbery itself did not exclude Petitioner from receiving FSA time credits because he was sentenced for a violation of 18 U.S.C. § 2113(d), bank robbery with a dangerous weapon, as opposed to a violation of § 2113(e), relating to bank robbery resulting in death, which is excluded under the FSA. *See* 18 U.S.C. § 3632(d)(4)(D)(xxxiii). However, Petitioner is also serving a sentence for possession or use of a firearm during the bank robbery, an offense which qualifies as a crime of violence, and prohibits him from receiving time credits under the FSA. 18 U.S.C. § 3632(d)(4)(D)(xxii).

hereby **FILED**, and a copy will be submitted to the Honorable Frank W. Volk, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Petitioner shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Thomas v. Arn*, 474 U.S. 140 (1985); *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Volk, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Petitioner and counsel of record.

**FILED:** May 5, 2022

Cheryl A. Eifert
United States Magistrate Judge